UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | | |
|---|---|---|
| NORMA TORRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.: |
| | ) | |
| UNIVERSAL PROTECTION | ) | |
| SERVICE, LLC | ) | |
| d/b/a ALLIED UNIVERSAL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____/ | | |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Norma Torres ("Plaintiff" or "Torres"), and files her Complaint against the Defendant, Universal Protection Service, LLC d/b/a Allied Universal ("Defendant" or "Allied"), and in support she states the following:

**NATURE OF THE CLAIMS**

1.      This is an action for monetary damages pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"); Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); and the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.* ("IHRA") to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's unlawful pattern and practice of discrimination and retaliation against Plaintiff due to her disability and retaliation for Plaintiff's lawful exercise of her rights under the FMLA.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the FMLA and ADA.

3.     This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## THE PARTIES

5.     Plaintiff, Torres, is a citizen of the United States, and is and was at all times material a resident of the State of Illinois, residing in Cook County, Illinois.

6.     Defendant, Allied, is a Delaware For Profit Corporation with its principal place of business in Santa Ana, California.

7.     Defendant does business in this judicial district and Plaintiff worked for Defendant at its 55 East Jackson Blvd., Chicago, Illinois 60604 location.

8.     Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

9.     Plaintiff has complied with all statutory prerequisites to filing this action.

10.     On September 20, 2019, Plaintiff dual-filed a claim with the Illinois Department of Human Rights Commission ("IDHR") and the Equal Employment Opportunity Commission

2

("EEOC"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e), based on disability and retaliation.

11.     Plaintiff's EEOC charge was filed within three hundred (300) days after the unlawful employment practices occurred.

12.     On January 7, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue, upon request.

13.     This complaint was filed within ninety (90) days Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## FACTUAL ALLEGATIONS

14.     Plaintiff worked for Defendant in a full-time capacity as a Client Manager. Plaintiff's job duties included, but were not limited to, overseeing client satisfaction and managing multiple accounts in and around Chicago, Illinois.

15.     Plaintiff is a disabled female.

16.     Plaintiff has been diagnosed with anxiety.

17.     At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

18.     Defendant treated Plaintiff in a disparate manner by assigning her an exorbitantly high workload and subjected her to increased scrutiny. For example, Plaintiff was responsible for managing approximately 13,000 man hours per week while other similarly situated non-disabled Client Managers managed only 7,000 to 8,000 man hours per week.

19.     Additionally, in a planned effort to set Plaintiff up for failure, Defendant assigned her notoriously difficult or already failing accounts such as Defendant's Entertainment Cruises account and its Cushman & Wakefield account.

20.     Despite Defendant's efforts to sabotage Plaintiff, she maintained her workload and did as Defendant asked. However, Defendant's actions exacerbated Plaintiff's anxiety.

21.     Due to Defendant's increasing hostility and the discriminatory work environment Plaintiff requested a transfer to an Account Management position. Plaintiff even spoke with Kevin Conway and Brian Bisenkamp, Director of Operations, about the same but received no response.

22.     Towards the end of 2018, Defendant hired William Jefferson (non-disabled) as a Client Manager.

23.     Under the guise of "redistributing" its accounts, Defendant took the opportunity to funnel its successful and high performing accounts to Mr. Jefferson while intentionally assigning Plaintiff additional failing accounts and accounts Defendant identified as "accounts in jeopardy." For example, Defendant assigned Plaintiff Entertainment Cruises – a failing account.

24.     Further Defendant reassigned Nefatari Gray, who worked directly under and assisted Plaintiff, to other accounts leaving Plaintiff intentionally shorthanded.

25.     Plaintiff raised her concerns about Mr. Gray's reassignment to Mr. Bisenkamp, but her concerns fell on deaf ears.

26.     Defendant escalated its discriminatory efforts when on February 5, 2019 it issued Plaintiff a "Final Warning" for events that occurred on August 29, 2018 and another minor occurrence on January 9, 2019. Defendant had not raised concerns with Plaintiff for either occurrence prior to this February 5, 2019 "Final Warning."

27.     Plaintiff immediately contacted Lori Swilley, Human Resources Director, to discuss the "Final Warning" as it was clearly intended to target Plaintiff.  Ms. Swilley discussed the same with Mr. Bisenkamp and eventually Ms. Swilley relented and agreed the "Final Warning" was baseless and removed it from Plaintiff's record however, the damage was already done.

28.     In or around March 2019, Mr. Conway left Defendant's employ and Mr. Bisenkamp was promoted from Director of Operations, to Interim General Manager, and eventually Mr. Bisenkamp became a General Manager.

29.     Plaintiff approached Mr. Bisenkamp with her concerns regarding the "accounts in jeopardy" she was assigned to handle, but her concerns were ignored. Mr. Bisenkamp flippantly responded to Plaintiff's concerns by stating that it was "just the nature of the beast" and provided Plaintiff no further support or guidance.

30.     Plaintiff worked tirelessly to save the failing accounts and bring them current. Instead of supporting her, Defendant refused to provide Plaintiff assistance, continued to withhold Ms. Gray's assistance, and made sweeping (false) allegations that Plaintiff was not performing her job duties. Defendant's efforts were focused solely on creating pretext for Plaintiff's termination.

31.     In March/April 2019 Plaintiff's sister was diagnosed with kidney failure.

32.     Plaintiff discussed her sister's condition with Mr. Bisenkamp and further advised Mr. Bisenkamp that she planned to undergo a Living Kidney Donor Evaluation to determine if she would be a candidate to donate a kidney to her sister.

33.     Plaintiff further notified Mr. Bisenkamp of her upcoming doctor's appointments related to such testing.

34.     As Plaintiff hoped testing would reveal her to be a positive match for kidney donation to her sister, she discussed the possibility of medical leave under the FMLA with Mr. Bisenkamp.

35.     Plaintiff was out of work for one or two days to undergo Living Kidney Donor Evaluation testing. Plaintiff dutifully kept Mr. Bisenkamp apprised of how the testing was progressing and of her sister's condition.

36.     Due to Plaintiff's disability and/or her perceived disability and in anticipation of Plaintiff utilizing protected medical leave Defendant increased its efforts to create pretext for her termination and discourage her from using protected medical leave.

37.     In the following days Mr. Bisenkamp informed Plaintiff that she would be responsible for meeting Entertainment Cruise cruises when they docked at 1:00am and other overnight hours – both on weekdays and weekends. This task is one typically assigned to Defendant's Operations Managers, not Client Managers.  However, Mr. Bisenkamp stated to Plaintiff in no uncertain terms that Plaintiff had no choice but to do the additional tasks. Specifically, he said "If you can't do the job, then you are unable to perform the duties of a Client Manager" implying if Plaintiff wanted to keep her job she must comply with Defendant's discriminatory demands.

38.     The continued harassment and discrimination caused Plaintiff's anxiety to flare and she sought treatment with her physician, Dr. Jennifer Goldfarb at Rush Lakeview.   Dr. Goldfarb evaluated Plaintiff and prescribed a course of treatment to include medication and a medical leave.

39.     The following week Defendant issued to Plaintiff a retaliatory and discriminatory Performance Improvement Plan ("PIP") which was to last approximately 30 days in duration. As

part of the PIP Defendant was to meet with Plaintiff for three follow up sessions to occur on May 20, 2019, May 28, 2019, and June 3, 2019 respectively.

40.     In May 2019, due to her disability and at her doctor's suggestion Plaintiff applied for and was approved for FMLA leave. Plaintiff then began her FMLA leave on or around May 23, 2019.

41.     Upon the expiration of her FMLA leave, Plaintiff was medically cleared to return to work on August 2, 2019. Plaintiff emailed Penny Green, Human Resources Manager, to coordinate her return to work. Ms. Green replied to Plaintiff's email advising her not to return until August 6, 2019.

42.     As requested, on August 6, 2019 Plaintiff arrived to work and was immediately escorted into a small office where she was questioned by Ms. Swilley and Mr. Bisenkamp about how she was feeling, if she was ready to return to work, and the like.

43.     During the conversation Defendant abruptly presented Plaintiff two choices: accept a severance agreement or face termination.

44.     Defendant then terminated Plaintiff.

45.     It is clear Defendant terminated Plaintiff while she was on FMLA leave due to its discriminatory animus towards her disability and in retaliation for taking FMLA leave.

46.     Defendant's performance improvement plan is designed to allow employees the opportunity to correct alleged performance deficiencies. However, due to her disability and use of FMLA leave Defendant terminated Plaintiff without providing her the opportunity to return to work and successfully complete her PIP.

47.     By contrast, Defendant has allowed other similarly situated, non-disabled employees not using continuous FMLA leave the opportunity to attempt to and/or successfully complete their PIP.

48.     Further, Defendant's discriminatory animus is demonstrated by the fact that while Plaintiff was on FMLA, Defendant filled her position with a male, non-disabled employee.

49.     Plaintiff learned her position had been filled when she received a call from Brick Yard, a client who was concerned about Plaintiff's timeline for returning to work because her "substitute," a man named Kevin Patel was having difficulty managing their account.

50.     Plaintiff has been damaged by Defendant's illegal conduct.

51.     Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

### Count I:
### Disability Based Discrimination in Violation of the ADA

52.      Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

53.     At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

54.     Plaintiff was able to perform the essential functions of her job at the time of her unlawful termination.

55.     Defendant is prohibited under the ADA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

8

56.     Defendant violated the ADA by terminating and discriminating against Plaintiff based on her disability.

57.     Plaintiff has been damaged by Defendant's illegal conduct.

58.     Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

59.      Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

60.     Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.


**Count II:**
**Retaliation in Violation of the ADA**

61.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

62.     Defendant intentionally retaliated against Plaintiff for engaging in protected activity and by unlawfully terminating her employment.

63.     Defendant's conduct violates the ADA.

64.     Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

65.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

66.     Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages.

## Count III:
## Interference in Violation of the FMLA

67.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

68.     Plaintiff was an employee eligible for protected leave under the FMLA.

69.     Defendant is and was an employer as defined by the FMLA.

70.     Plaintiff exercised, or attempted to exercise, her rights under the FMLA.

71.     Defendant interfered with Plaintiff's lawful exercise of her FMLA rights.

72.     Defendant's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

73.     Plaintiff was injured due to Defendant's willful violations of the FMLA, to which she is entitled to legal relief.

## Count IV:
## Retaliation in Violation of the FMLA

74.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

75.     Plaintiff was an employee eligible for protected leave under the FMLA.

76.     Defendant is and was an employer as defined by the FMLA.

77.     Plaintiff exercised or attempted to exercise her rights under the FMLA.

78.     Defendant retaliated against Plaintiff for exercising or attempting to exercise her FMLA rights.

79.     Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

80.     Plaintiff was injured due to Defendant's willful violations of the FMLA and she is entitled to legal relief.

### Count V:
### Disability Based Discrimination in Violation of the IHRA

81.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

82.      At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the IHRA.

83.     Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

84.     Defendant is prohibited under the IHRA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

85.     Defendant violated the IHRA by unlawfully terminating and discriminating against Plaintiff based on her disability.

86.     Defendant intentionally discriminated against Plaintiff on the basis of her disability.

87.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the IHRA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

88.     Defendant's unlawful conduct in violation of the IHRA is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

## Count VI:
### Retaliation in Violation of the IHRA

89.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-51 above.

90.     Plaintiff engaged in protected activity under the IHRA while employed by Defendant.

91.     Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity.

92.     Defendant's conduct violated the IHRA.

93.      Defendant's discriminatory conduct, in violation of the IHRA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

94.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

95.     Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress

damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b) Grant Plaintiff her costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all triable issues herein.


Respectfully Submitted:

*/s/ Gary Martoccio*
Gary Martoccio
Illinois Attorney Registration No. 6313431
Spielberger Law Group
4890 W. Kennedy Blvd.
Suite 950
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
gary.martoccio@spielbergerlawgroup.com

*Counsel for Plaintiff*